UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **N.L.,** *et al.*,<br><br>**Plaintiffs,**<br><br>v.<br><br>**District of Columbia,**<br><br>**Defendant.** | No. 24-cv-3165 |

**REPORT AND RECOMMENDATION**

Plaintiffs, N.L. and her parents, bring this action against the District of Columbia Public Schools ("DCPS"), alleging violations of the Individuals with Disabilities Education Act ("IDEA"). *See* 20 U.S.C. § 1400–82.

Plaintiffs filed a Motion for Summary Judgment. *See* Pls.' Mot. for Summ. J. ("Pls.' Mot.") 1, ECF No. 15. Defendant filed a Cross Motion for Summary Judgment requesting that this Court uphold the Hearing Officer Decision ("HOD"). *See* Def.'s Cross Mot. Summ. J. & Opp'n to Pls.' Mot. Summ. J. ("Def.'s Cross Mot.") 1, ECF No. 19. The undersigned recommends DENYING Plaintiffs' Motion for Summary Judgment and GRANTING Defendant's Cross Motion for Summary Judgment.

**I.   BACKGROUND**

   A.   Statutory Framework

The IDEA aims to provide "every child [with] a meaningful opportunity to benefit from public education." *Boose v. Dist. of Columbia*, 786 F.3d 1054, 1056 (D.C. Cir. 2015). Congress enacted the IDEA to "ensure that all children with disabilities have available to them a free

1

appropriate public education [("FAPE")] that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living." 20 U.S.C. § 1400(d)(1)(A). "While the District of Columbia is required to provide a FAPE to disabled students, it is not required to, and does not guarantee, any particular outcome or any particular level of academic success." *Holman v. Dist. of Columbia*, 153 F. Supp. 3d 386, 389–90 (D.D.C. 2016) (citing *Bd. of Educ. of Hendrick Hudson Central Sch. Dist. v. Rowley*, 458 U.S. 176, 192 (1982)).

To satisfy the FAPE requirement, "school districts must develop a comprehensive plan, known as an individualized education program [("IEP")], for meeting the special-educational needs of each student with a disability." *K.S. v. Dist. of Columbia*, 962 F. Supp. 2d 216, 220 (D.D.C. 2013) (citing 20 U.S.C. § 1414(d)(2)(A)). "The IEP is a written statement that is reviewed annually and includes goals and instructional objectives for the student's education, services to be provided, projections regarding the dates on which such services are to be offered, and criteria for evaluating whether instructional objectives are met." *Holman*, 153 F. Supp. 3d at 389 (citing 20 U.S.C. §§ 1401(14), 1414(d)(1)(A)). The IEP must be "reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances." *Endrew F. ex rel. Joseph F. v. Douglas Cty. Sch. Dist. RE-1*, 580 U.S. 386, 399 (2017).

"Once the IEP is developed, the school system must provide an appropriate educational placement that comports with the IEP. . . [and if] no suitable public school is available, the school system must pay the costs of sending the child to an appropriate private school." *B.B. v. Dist. of Columbia*, 20-cv-2467, 2022 WL 834146, at *2 (D.D.C. March 21, 2022) (citations and quotation marks omitted). Parents who place their child in private school rather than follow a public school's IEP "are entitled to reimbursement *only* if a federal court concludes both that the public placement

violated IDEA and that the private school placement was proper under the Act." *Florence Cnty. Sch. Dist. Four v. Carter By & Through Carter*, 510 U.S. 7, 15 (1993).

"[A]ny party" may present a due process complaint "with respect to any matter relating to the identification, evaluation, or educational placement of the child or the provision of a [FAPE] to such child." 20 U.S.C. § 1415(b)(6)(A). "Whenever a complaint has been received under subsection (b)(6) . . . the local educational agency involved in such complaint shall have an opportunity for an impartial due process hearing, which shall be conducted by the State educational agency or by the local educational agency." *Id.* § 1415(f)(1)(A). Any party may appeal that decision in court. *See id.* § 1415(i)(2)(A).

B.  Background

During the 2021–2022 school year, N.L. was a student at Lab School of Washington ("Lab"). *See* AR at 7; 24. In May 2022, Plaintiffs met with DCPS staff for an IEP annual review. *See id.* at 7. At that meeting, Plaintiffs informed DCPS that they were seeking to transfer N.L. from Lab to either the Harbour School ("Harbour") or the Katherine Thomas School ("KTS"). *See id.* DCPS agreed to place N.L. at KTS because Harbour, a private school in Maryland for children with learning disabilities, did not have a certificate of approval (COA) from the Office of the State Superintendent of Education. *See id.* On May 25, 2022, DCPS offered N.L. placement at KTS for the 2022–2023 school year. *See id.* On July 18, 2022, Plaintiffs' counsel informed DCPS that they would instead enroll N.L. at Harbour and requested that DCPS fund the placement. *See id.* DCPS declined to do so. *See id.* at 8.

On August 18, 2022, N.L. started 9th grade at Harbour. *Id.* Harbour created and implemented an IEP for N.L. *See id.* N.L.'s 2022–2023 year-end transcript reflects incomplete

grades in seven classes and a pass in one class, earning 2 credits and 0 units toward graduation. *Id.* at 337.

In May 2023, N.L.'s IEP expired. *See id.* at 17. On July 25, 2023, DCPS conducted an eligibility meeting for N.L. *See id.* at 10. DCPS determined that N.L. was eligible for special education and related services. *See id.* at 10; 780. By August 2023, N.L. still had not received a proposed placement from DCPS. *See id.* at AR 17; 1104–05. On August 3, 2023, Plaintiffs' counsel notified DCPS that they would again enroll N.L. at Harbour for the 2023–2024 school year. *See id.* at 11. Plaintiffs requested that DCPS pay N.L.'s tuition. *See id.* DCPS again declined to do so. *See id.*

On October 23, 2023, DCPS developed a renewed IEP for N.L. *See id.* at 12. The IEP provided for placement in a full-time special education setting in a non-public school. *See id.* After this meeting, DCPS sent applications to 16 schools for N.L. *See id.* at 12; 1146. The Children's Guild accepted N.L. *See id.* at 12. Plaintiffs' counsel declined the placement, citing the student body make-up, the progress N.L. was making at Harbour, and Harbour's proximity to N.L.'s home. *See id.* On July 17, 2024, DCPS issued notice that it would continue N.L.'s placement at the Children's Guild. *See id.* at 13. Plaintiffs' counsel informed DCPS that N.L. would enroll at Harbour for the 2024–2025 school year and requested that DCPS pay N.L.'s tuition. *See id.* DCPS again declined to do so. *See id.*

On June 7, 2024, Plaintiffs filed an administrative complaint against DCPS, alleging denial of a FAPE by failing to provide appropriate education placements for the 2022–2023 and 2023–2024 school years. *See id.* at 50–57. Hearing Officer ("HO") Banks found that while DCPS failed to provide a FAPE to N.L., Harbour was not an appropriate placement. *See id.* at 19; 22. Thus, Plaintiffs were not entitled to tuition reimbursement or prospective placement at Harbour. *See id.*

4

at 22. HO Banks ordered DCPS to find an appropriate placement for N.L. for the remainder of the 2024–2025 school year. *See id.* at 23. Plaintiffs appeal the denial of reimbursement and refusal to place N.L. at Harbour. *See* Pls.' Mot. at 2.

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 56(c) provides that a court must grant summary judgment when "there is no genuine issue as to any material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986) (quoting Fed. R. Civ. P. 56(c)). The court must view the facts "in the light most favorable to the party opposing the motion." *Williams v. Wash. Metro. Area Transit Auth.*, 721 F.2d 1412, 1414–15 (D.D.C. 1983) (citing *United States v. Diebold, Inc.*, 369 U.S. 654 (1962)).

Summary judgment under the IDEA "is not a true summary judgment procedure." *L.R.L. ex rel. Lomax v. Dist. of Columbia*, 896 F. Supp. 2d 69, 73 (D.D.C. 2012) (quoting *Ojai Unified Sch. Dist. v. Jackson*, 4 F.3d 1467, 1472 (9th Cir. 1993). "Instead, the district court essentially conduct[s] a bench trial based on a stipulated record." *Id.* Therefore, "[a] motion for summary judgment operates as a motion for judgment based on the evidence comprising the record and any additional evidence the Court may receive." *N.W. v. Dist. of Columbia*, 253 F. Supp. 3d 5, 12 (D.D.C. 2017) (quoting *D.R. ex rel. Robinson v. Dist. of Columbia*, 637 F. Supp. 2d 11, 16 (D.D.C. 2009)).

The burden is on the plaintiff to prove by a preponderance of the evidence that the hearing officer was wrong. *See* 20 U.S.C. § 1415(i)(2)(C)(iii); *Pavelko v. Dist. of Columbia*, 288 F. Supp. 3d 301, 306 (D.D.C. 2018). "While the court must make an independent determination, the court also should give 'due weight' to the decision of the hearing officer and should afford some deference to the expertise of the hearing officer and the school officials." *Middleton v. Dist. of Columbia*, 312 F. Supp. 3d 113, 129 (D.D.C. 2018) (quoting *D.K. v. Dist. of Columbia*, 983 F.

Supp. 2d 138, 144 (D.D.C. 2013)). In accordance with this deference, "[f]actual findings from the administrative proceeding are to be considered prima facie correct," *D.R. ex rel. Robinson*, 637 F. Supp. 2d at 16 (quoting *S.H. v. State-Operated Sch. Dist. of Newark*, 336 F.3d 260, 270 (3d Cir. 2003)), "unless [the court] can point to contrary nontestimonial extrinsic evidence on the record," *A.A. v. Dist. of Columbia*, No. 16-cv-248, 2017 WL 11589194, at *6 (D.D.C. Apr. 20, 2017) (quoting *Savoy v. Dist. of Columbia*, 844 F. Supp. 2d 23, 30 (D.D.C. 2012)). Courts should not "substitute their own notions of sound educational policy for those of the school authorities which they review." *Rowley*, 458 U.S. at 206. Still, courts are to offer "'less deference than is conventional' in administrative proceedings." *Reid ex rel. Reid v. Dist. of Columbia*, 401 F.3d 516, 521 (D.C. Cir. 2005) (quoting *Kerkam v. McKenzie*, 862 F.2d 884, 887 (D.C. Cir. 1989)). Pure questions of law, however, are reviewed de novo. *See id.*

### III.   DISCUSSION

#### A.   Additional Evidence

The IDEA states that district courts "shall hear additional evidence at the request of a party." 20 U.S.C. § 1415(i)(2)(C)(ii). "Despite the statute's use of the word 'shall,' the D.C. Circuit has held that district courts have broad discretion to accept or reject additional evidence." *Carson v. Dist. of Columbia*, 187 F. Supp. 3d 197, 200 (D.D.C. 2016). In exercising that discretion, the court should not only consider whether the evidence is relevant to the challenged decisions of the hearing officer, but also guard against accepting evidence that is not "merely supplemental to the administrative record" or would cause federal court review to "rise to the level of a *de novo* trial." *Miller ex rel. S.M. v. Bd. of Educ. of Albuquerque Pub. Schs.*, 565 F.3d 1232, 1241 (10th Cir. 2009) (*quoting L.B. ex rel. K.B. v. Nebo Sch. Dist.*, 379 F.3d 966, 974 (10th Cir. 2004)). "'Supplementation' of the administrative record may be justified by 'gaps in the ad administrative

6

transcript owing to mechanical failure, unavailability of a witness, an improper exclusion of evidence by the administrative agency[.]'" *Smith v. Dist. Of Columbia*, 12-cv-2058, 2013 WL 4041451, at *3 (D.D.C. July 9, 2013) (quoting *Town of Burlington v. Dep't of Educ. for Mass.*, 736 F.2d 773, 790 (1st Cir. 1984)).

### 1.   *Evidence Predating the Hearing*

Plaintiffs seek to admit two sets of reports that predate the administrative hearing: quarterly progress reports from the 2022–2023 school year and an IEP progress reports from the 2023–2024 school year. *See* Pls.' Mot. at 26–28.

Plaintiffs state that they "mistakenly left [the reports] out of the disclosure." Pls.' Mot. at 27. But "federal court . . . is not the forum in which a litigant may pick up the sticks she dropped in an administrative hearing." *Wade v. Dist. of Columbia*, 20-cv-1433, 2021 WL 3663630, at *5 (D.D.C. Aug. 18, 2021). As such, "negligen[ce] in failing to submit [evidence]" is an insufficient justification for supplementation. *See MacKay v. Quigg*, 641 F. Supp. 567, 570 (D.D.C. 1986) (quoting *California Research Corp. v. Ladd*, 356 F.2d 813, 821 n.18 (D.C. Cir. 1966). An omission that stemmed from circumstances outside of Plaintiffs' control could have been sufficient justification, but Plaintiffs have not shown that here. *See Smith*, 2013 WL 4041451 at *3.

Plaintiffs argue that it was either DCPS's or HO Banks's error that the reports were not admitted. *See* Pls.' Mot. at 27. However, "[i]n IDEA administrative hearings, 'the party who filed for the due process hearing shall bear the burden of production.'" *Uhlenkamp v. Dist. of Columbia*, 691 F. Supp. 3d 224, 236 (D.D.C. 2023) (citing D.C. Code § 38-2571.03(6)(A)). As such, Plaintiffs alone had the duty to submit the evidence on which they wanted the HO to rely. *See Brandon H. ex rel. Richard H. v. Kennewick Sch. Dist. No. 1*, 82 F. Supp. 2d 1174, 1181 (E.D. Wash. 2000). Their failure to do so bars supplementation now. *See, e.g.*, *Carson*, 187 F. supp. 3d at 201 (denying

plaintiff's request to admit emails she had at the time of the administrative hearing but failed to submit into evidence, noting that "the various reasons for supplementing the administrative record focus on evidence that is . . . omitted from the record due to some error in the hearing process by the agency.").

Separately, Plaintiffs argue that HO Banks had an independent duty to ask for the unadmitted progress reports. *See* Pls.' Mot. at 27. Plaintiffs' source for this duty is the *Dispute Resolution Standard Operating Procedures Manual* ("SOP"). *See id.* at 24–25. Yet the manual only states that "the [HO] may [] ask questions of the witnesses . . . And allow parties to present rebuttal evidence." SOP at 31. This language is permissive and discretionary. *C.f. Stevens Shipping Co. v. Kinlaw*, 99-cv-1954, 2000 WL 1804524, at *3 (4th Cir. Dec. 8, 2000) (ALJs' authority to consider a modification request "is clearly permissive and not mandatory."). The SOP does not mandate that an HO ask certain questions, much less seek out documents that petitioners may have left out. *C.f. Appalachian Power Co. v. E.P.A.*, 135 F.3d 791, 807 (D.C. Cir. 1998) ("when a statute uses the permissive 'may' rather than the mandatory 'shall,' [it] suggests that Congress intends to confer some discretion on the agency"); *Phasoulas v. Astrue*, 10-cv-63, 2011 WL 2447455, at *5 (W.D.N.C. May 18, 2011), report and recommendation adopted, 2011 WL 2416096 (W.D.N.C. June 15, 2011) (regulation stating that "ALJ *may* need to obtain" certain information "does not *require*" the ALJ to do so).

        2.     *Evidence Postdating the Hearing*

"While 'judicial review under the IDEA does look backward to some extent' and may therefore warrant the review of evidence arising after the administrative hearing, '[j]udicial review . . . under the IDEA is largely prospective.'" *M.K-N. v. Dist. Of Columbia*, 12-cv-1123, 2013 WL 3376773, at *3 (D.D.C. July 5, 2013) (quoting *Schaffer ex rel. Schaffer v. Weast*, 554

8

F.3d 470, 476–78 (4th Cir. 2009). "The court should accordingly examine the appropriateness of [placement] at the time [the school district decided it] and should consider a review of post-hearing evidence sparingly." *M.K-N.*, 2013 WL 3376773 at *3. "Introduction of post-hearing evidence undercuts the prospective nature of judicial review and 'would simply not be fair to school districts, whose decisions would be judged in hindsight' based on an assessment of a student's needs at a later time." *Id.* (quoting *Schaffer*, 554 F.3d at 476).

Plaintiffs seek to introduce progress reports from the 2024–2025 school year, which postdate both the administrative hearing and HOD, to show that Harbour was an appropriate placement. *See* Pls.' Mot. at 27–28. However, these reports are post-hearing evidence that would serve as "hindsight evidence," which is not typically admitted. *See Philpot v. Dist. of Columbia*, 23-cv-671, 2025 WL 1305284, at *1 (D.D.C. May 6, 2025); *Edward M.R. v. Dist. of Columbia*, 128 F. 4th 290, 295 (D.C. Cir. 2025) (HO's conclusion about the adequacy of an IEP must be based on information "as of the time each IEP was created rather than with the benefit of hindsight"); *Z.B. v. Dist. of Columbia*, 888 F.3d 515, 524 (D.C. Cir. 2018) (same). These reports did not exist at the time HO Banks rendered his decision. As such, admitting them would "extend beyond the scope of this Court's review of the HOD." *M.K-N.*, 2013 WL 3376773 at *3 (denying plaintiff's request to supplement the record with post-HOD IEP meeting notes because they did not exist at the time of the hearing).

In addition, courts should not admit evidence postdating the administrative hearing where "granting [the] request would result in a trial *de novo*." *B.G. by J.A.G. v. City of Chicago Sch. Dist. 299*, 243 F. Supp. 3d 964, 977 (N.D. Ill. 2017). In *Carson v. Dist. of Columbia*, the court found that admitting meeting notes and an IEP that the school created after the HO rendered her decision "r[an] the risk converting the proceeding into a *de novo* trial." 187 F. Supp. 3d 197, 204 (D.D.C.

9

2016). This was because the "new evidence [sought] to challenge the [HO's] finding that Plaintiff failed to meet her burden by supplementing the record with information that was not presented to the [HO] at the time." *Id.* Similarly, admitting reports that did not exist when HO Banks rendered his decision would require this Court to make new factual findings on N.L.'s progress, resulting in an impermissible trial *de novo*. *See id.* Therefore, the Court will not admit this evidence.

B.  Witness Testimony

The HO, as "the trier of fact at the due process hearing," has the "responsibility to determine how much weight to give the evidence." *A.I. ex rel. Iapalucci v. Dist. of Columbia*, 402 F. Supp. 2d. 152, 170 (D.D.C. 2005). An HO's credibility determinations "deserve deference unless non-testimonial, extrinsic evidence in the record would justify a contrary conclusion or unless the record read in its entirety would compel a contrary conclusion." *Carlisle Area Sch. v. Scott P. By & Through Bess P.*, 62 F.3d 520, 528 (3d Cir. 1995); *see, e.g.*, *J.N. v. Dist. of Columbia*, 677 F. Supp. 2d 314, 322 (D.D.C. 2010). However, HO determinations that lack reasoned and specific findings deserve little deference from a court. *See Turner v. Dist. of Columbia*, 952 F. Supp. 2d 31, 36 (D.D.C. 2013).

First, Plaintiffs argue that HO Banks improperly discredited Dr. Solomon's opinion because HO Banks is biased against retained experts. *See* Pls.' Mot. at 21–22. "When reviewing [such a claim], we begin with the presumption that the [HO] is unbiased." *Keith v. Barnhart*, 473 F.3d 782, 788 (7th Cir. 2007). Plaintiffs cite to an order by HO Banks in another matter where he stated that "[his] experience with educational advocates in this jurisdiction is that they generally perform as advocates for their clients' interests rather than as impartial, objective advisers." *See* Pls.' Mot. at 21 (quoting Pls.' Ex. 1, ECF No. 15-2, *C.M. v. Dist. of Columbia*, Order on Motion to Permit Observation, Mar. 28, 2025). But Plaintiffs offer no evidence that HO Banks's remarks in

an unrelated matter impacted his credibility determination of Dr. Solomon. This ends the inquiry. "It is only after a petitioner has demonstrated that the decisionmaker 'displayed deep-seated and unequivocal antagonism that would render fair judgment impossible' that the presumption is rebutted, the findings set aside, and the matter remanded for a new hearing." *Keith*, 473 F.3d at 788 (quoting *Liteky v. United States*, 510 U.S. 540, 556 (1994)). Plaintiffs made no such demonstration here. Moreover, an ALJ "can ordinarily participate in an adjudication after opining on disputed issues in the course of other proceedings. After all, judges must often decide issues after squarely deciding the same issues in other proceedings." *Zen Magnets, LLC v. Consumer Prod. Safety Comm'n*, 968 F.3d 1156, 1171 (10th Cir. 2020).

Second, Plaintiffs argue that HO Banks failed to adequately explain why he discredited Dr. Solomon's testimony because his explanation was not "statement-by-statement or issue-by-issue." Pls.' Mot. at 22–23. Plaintiffs rely on *W.S. v. Dist. of Columbia* to support their claim that courts require a statement-by-statement analysis when discounting expert testimony. *See id.* at 22 (citing 502 F. Supp. 3d 102, 123 (D.D.C. 2020)). But Plaintiffs misapply *W.S.* True, the *W.S.* court upheld the HO's credibility determination where that HO engaged in a statement-by-statement analysis. *See* 502 F. Supp. 3d at 123. However, that court did not hold that an HO was required do so. *See id.* Thus, HO Banks was under no obligation to do so here.

On the other hand, an HO's analysis is deficient if he fails all together to consider contradictory expert testimony. *See id.* at 126–27. Here, HO Banks sufficiently weighed Dr. Solomon's testimony against evidence in the record and explained what evidence he found more persuasive. *See* AR 19–22. For example, HO Banks concluded that "despite . . . [Dr. Solomon's] comments at the October 23, 2023 IEP meeting that they were pleased with [N.L.]'s progress, there is no objective evidence that [N.L.] made academic progress during the 2022–23 school year at

[Harbour]." AR at 21–22. These "reasonable credibility determinations [by HO Banks] are entitled to deference," because he "balanced the testimony of Plaintiffs' witnesses against . . . documentary evidence, and [] indicated when he gave more deference to one over the other." *See B.B.*, 2022 WL 834146 at *11; AR 19–22.

        C.      <u>Harbour was not an appropriate placement for N.L.</u>

A placement is proper under the IDEA if it is "reasonably calculated to enable the child to receive educational benefits." *Leggett v. Dist. of Columbia*, 793 F.3d 59, 71 (D.C. Cir. 2015). While no one factor is dispositive, objective factors such as test scores, passing grades in courses, and grade level advancement are important benchmarks in determining satisfactory progress. *See e.g.*, *H.W. by & through Jennie W v. Comal Indep. Sch. Dist.*, 32 F.4th 454, 469 (5th Cir. 2022) ("The extent to which H.W. has progressed on her IEP goals and objectives, as well as her test scores and percentile rankings, can aid [in determining overall academic success], but no one factor can overwhelm it."); *see also Alex R., ex rel. Beth R. v. Forrestville Valley Cmty. Unit Sch. Dist. No. 221*, 375 F.3d 603, 615 (7th Cir. 2004) ("Objective factors, such as regular advancement from grade to grade, and achievement of passing grades, usually show satisfactory progress."). "Parents seeking reimbursement for a unilateral private placement bear the burden of proving that placement was appropriate." *Fisher v. Friendship Pub. Charter School*, 10-cv-886, 2012 WL 11916732, at *6 (D.D.C. Jan. 26, 2012) (citing *Schaffer*, 546 U.S. at 57–58).

At the outset of his analysis, HO Banks explained how he weighed the evidence: he placed the "greatest reliance" on objective data like evaluations and standardized tests, "somewhat less reliance" on grades because "there is necessarily an element of subjectivity," and even less reliance on progress reports because "they are more subjective [than grades] and the authors are not usually

available to testify." AR at 20. HO Banks stated that "testimony of experts and parents is persuasive to the extent that their opinions are supported by objective data in the record." *Id*.

This "court should defer to the [HO's] determination of the weight to give the evidence." *Edward M.R.*, 660 F. Supp. 3d at 155 (citing *B.B.*, 2022 WL 834146 at *10 ("A hearing officer in an IDEA administrative proceeding is the trier of fact and responsible for determining how much weight to give the evidence[.]"). HO Banks repeatedly explained his concern with the lack of objective evidence presented by Plaintiffs. *See* AR at 21–22. Plaintiffs offered no standardized test results from Harbour—despite N.L. having completed two years there—from which HO Banks could have discerned N.L.'s performance. *See id.* at 21. And while Plaintiffs admitted N.L.'s 2022–2023 report card—which reflected incomplete grades in seven classes—they did not admit her report card for the 2023–2024 year. *See id.* at 22; 337. This again deprived HO Banks of an objective metric of success. HO Banks was also concerned that Plaintiff "offered no testimony from [Harbour] as to its suitability for [N.L.]" given that petitioners typically offer such testimony where they seek to justify unilateral placement. *See id.* at 21. HO Banks was within his discretion to conclude that Plaintiffs failed to meet their burden of proof that Harbour was an appropriate placement because of these gaps in the evidence. *See Fisher*, 2012 WL 11916732 at *6.

Instead, Plaintiffs relied on IEP progress reports to demonstrate that Harbour was an appropriate placement for N.L. *See id.* at 21. Plaintiffs argue that HO Banks failed to properly consider these reports.[1] *See* Pls.' Mot. at 15–18. Plaintiffs are mistaken. HO Banks considered

---

[1] Relying on *Bd. of Educ. of Fredrick Cnty. v. I.S. ex rel. Summers*, Plaintiffs argue that N.L. achieving some of her IEP goals is a critical measure of progress. *See* Pls.' Mot. at 17. Not so. The *Bd. of Educ. of Fredrick Cnty* court found that *not* achieving IEP goals demonstrated that the student failed to make significant progress. *See* 325 F. Supp. 2d 565, 583 (D. Md. 2004). Plaintiffs argue that the reverse must also be true: achieving most of the IEP goals equals significant progress. *See* Pls.' Mot. at 17–18. This is "the fallacy of the inverse (otherwise known as denying the

those progress reports but found them to be unpersuasive and due "little weight." AR at 21. This was because while these reports showed that N.L. achieved her goals in reading and writing, they contradicted her report card which "indicated that s/he earned no credit in either subject." *Id.* It was well within HO Banks's discretion to find some evidence more persuasive than others. *See Cloud v. United States,* 17-cv-316, 2019 WL 1924363, at *7 (D.D.C. Apr. 30, 2019). In discounting the persuasiveness of the progress reports, HO Banks was "utilizing his knowledge and experience such that judicial deference to his expertise is especially appropriate." *Block v. Dist. of Columbia*, 748 F. Supp. 891, 896 (D.D.C. 1990). Indeed, HO Banks was under no obligation to "offer a detailed explanation for why he gave more weight to Defendants' evidence than to Plaintiffs' evidence." *Iapalucci*, 402 F. Supp. 2d at 170. "There are strong policy considerations for providing the [HO] such leeway; as the [HO]—as opposed to this Court—has an opportunity to hear testimony in person, examine the demeanor of the witness and reactions of the participants, and can bring immeasurable experience and expertise in this specialized area." *Id.*

    D.    <u>Denial of FAPE Does Not Entitle Plaintiffs to Requested Remedy</u>

An HO has "broad discretion to fashion an appropriate remedy" after finding a denial of FAPE. *B.D. v. Dist. of Columbia*, 817 F.3d 792, 797–98 (D.C. Cir. 2016) (quoting *Boose v. Dist. of Columbia*, 786 F.3d 1054, 1056 (D.C. Cir. 2015)). For example, an HO can require tuition reimbursement. *See Lomax*, 896 F.Supp.2d at 76. However, reimbursement is "*only* [permissible]

---

antecedent): the incorrect assumption that if P implies Q, then not-P implies not-Q." *N.L.R.B. v. Noel Canning*, 573 U.S. 513, 589 (2014) (Scalia, J., concurring). Regardless, this Court need not consider this leap in logic because HO Banks's analysis was not limited to IEP goal achievements.

if a federal court concludes both that the public placement violated IDEA and that the private school placement was proper under the Act." *Florence Cnty.*, 510 U.S. at 15.

Plaintiffs argue that courts cannot "award [] nothing" where there was a denial of FAPE. Pls.' Mot. at 11–13. Plaintiffs rely heavily on two cases to support their claim: *Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230 (2009) and *Sch. Comm. of Town of Burlington, Mass. v. Dep't of Educ. of Mass.*, 471 U.S. 359 (1985). *See id.* However, both cases hold only that reimbursement of private school tuition is not categorically precluded by the IDEA. *See Forest Grove*, 557 U.S. at 247; *Burlington*, 471 U.S. at 369–70. Neither case holds that tuition reimbursement is mandated if there is a denial of a FAPE. In fact, the *Burlington* Court held that the tuition reimbursement determination was predicated on whether "[the private school] placement, rather than a proposed IEP, is proper under the Act." 471 U.S. at 369. The *Burlington* Court warned that "parents who unilaterally change their child's placement during the pendency of review proceedings, without the consent of state or local school officials, do so at their own financial risk." *Id.* at 373–74.

Indeed, courts have refused tuition reimbursement despite a denial of FAPE. For example, in *Anthony B. Through Thomas B. v. Colonial Sch. Dist.*, the HO found that the school district had denied the plaintiff a FAPE. *See* 22-cv-1640, 2023 WL 5227108, at *1 (3d Cir. July 26, 2023). However, the HO found that there was "no reliable evidence that [plaintiff's] private school placement was appropriate" and thus denied reimbursement. *Id*. The Third Circuit affirmed the HO's denial, holding that because the evidence failed to show that the private placement "provide[d] significant learning and confer[red] meaningful benefit" the placement was improper and denial of reimbursement was appropriate. *Id.* (quoting *Mary T. v. Sch. Dist. of Phila.*, 575 F.3d 235, 242 (3d Cir. 2009). Because Harbour was not an appropriate placement, *see supra*, HO Banks was not obligated to award tuition reimbursement. *See Anthony B.*, 2023 WL 5227108 at *1.

15

Similarly, with respect to prospective placement, the IDEA requires that it be an *appropriate* placement. *See K.B. v. Dist. of Columbia*, 13-cv-0649, 2015 WL 5191330, at *13 (D.D.C. Sept. 4, 2015). A plaintiff's "preference for a different, specific placement does not supply a basis for the Court to find that the [HO] erred as a matter of law in finding that he could not legally order DCPS to fund [the student's] placement at [the parents' chosen school.]" *Dobbins v. Dist. of Columbia*, 15-cv-0039, 2016 WL 410995 at *8. (D.D.C. February 2, 2016). Plaintiffs argue, citing one sentence in *Carter*, that the standard for "proper" placement by parents is lower than that of an "appropriate" placement by a school district. *See* Pls.' Mot. at 14–15 (citing *Carter By and Through Carter v. Florence County School Dist. Four*, 950 F.2d 156, 164 (4th Cir. 1991)). However, Plaintiffs failed to include the following sentence which concludes that "a private school placement is proper under the Act if the education provided by the private school is reasonably calculated to enable the child to receive educational benefits,—the same standard by which the appropriateness of a public school's IEP is assessed." *Carter*, 950 F.2d at 164 (internal quotations and citation omitted). Again, because Harbour was not an appropriate placement for N.L., Plaintiffs are not entitled to prospective placement there. *See Philpot*, 2025 WL 1311025 at *7 (affirming HO's determinations that a remedy of prospective placement was "unwarranted" because there was little evidence that the plaintiff's preferred school would address the student's needs better than DCPS's proposed program).

## IV. RECOMMENDATION

For these reasons, the undersigned recommends DENYING Plaintiffs' Motion for Summary Judgment and GRANTING Defendant's Cross Motion for Summary Judgment.[2]

Date: January 23, 2026

ZIA M. FARUQUI
UNITED STATES MAGISTRATE JUDGE

---

[2] The parties are hereby advised that, under the provisions of Local Rule 72.3(b) of the U.S. District Court for the District of Columbia, any party who objects to the Report and Recommendation must file a written objection thereto with the Clerk of this Court within fourteen days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the report and/or recommendation to which objection is made and the basis for such objections. The parties are further advised that failure to file timely objections to the findings and recommendations set forth in this report may waive their right of appeal from an order of the District Court that adopts such findings and recommendation. *See Thomas v. Arn*, 474 U.S. 140, 144–45 (1985).